IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-01658

GASCO ENERGY, INC.,

      Plaintiff,

v.

ENVIRONMENTAL PROTECTION AGENCY,

      Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

UNITED STATES OF AMERICA,

      Counterclaim Plaintiff,

v.

GASCO ENERGY, INC.

      Counterclaim Defendant.

---

## ANSWER AND COUNTERCLAIMS

---

      The United States Environmental Protection Agency ("EPA") responds to the Complaint for Review of Final Agency Action under the Administrative Procedure Act filed by Gasco Energy, Inc. ("Gasco") as follows:

### INTRODUCTION

      Gasco's complaint seeks judicial review under the Administrative Procedure Act of a document entitled "Findings of Violation and Administrative Order for Compliance" ("Administrative Order" or "Compliance Order") issued by EPA under section 309 of the Clean

Water Act, 33 U.S.C. § 1319.  Because the complaint involves review under the Administrative Procedure Act, review is limited to the administrative record compiled by EPA.  5 U.S.C. § 706. Although the allegations of fact in the complaint and any responses contained in an answer are not part of the record on judicial review, EPA responds to the numbered paragraphs of Gasco's complaint below.

## ANSWER TO ALLEGATIONS

1.     The allegations in Paragraph 1 constitute Gasco's characterization of this action and its complaint, to which no response is required.

2.     The allegations in the first sentence of Paragraph 2 constitute Gasco's characterization of this action and its complaint, to which no response is required.  The allegations in the second sentence of Paragraph 2 are legal conclusions to which no response is required.

3.     The allegations in the first sentence of Paragraph 3 are legal conclusions to which no response is required.  To the extent a response is required, EPA denies the allegations in the first sentence of Paragraph 3.   In response to the second sentence of Paragraph 3, EPA admits that its determination of regulatory jurisdiction in the Compliance Order relies in part on information contained in a "Memorandum For Record" on the subject of "Initial Enforcement Investigation Report" and on information contained in a "Memorandum to File" on the subject of "Preliminary Jurisdictional Determination Findings for Unauthorized Gasco Energy, Incorporated Lamb Trust Wells, #2008-206," including attachments, (the "Preliminary Jurisdictional Determination").

4.     The allegations in Paragraph 4 are legal conclusions to which no response is required.  To the extent a response is required, EPA denies the allegations in Paragraph 4.

5.      The allegations in the first sentence in Paragraph 5 are legal conclusions to which no response is required.  The allegations in the second, third and fourth sentences in Paragraph 5 quote from a publication of the U.S. Army Corps of Engineers ("Corps") entitled *Interim Regional Supplement to the Corps of Engineers Wetland Delineation Manual: Arid West Region* ("Arid West Supplement"), attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents. The allegations in the fifth and sixth sentences of Paragraph 5 are legal conclusions to which no response is required.  To the extent a response is required, EPA denies the allegations in the fifth and sixth sentences of Paragraph 5.

6.      The allegations in Paragraph 6 are legal conclusions to which no response is required.  To the extent a response is required, EPA denies the allegations in Paragraph 6.

7.      EPA admits the allegations in Paragraph 7.

8.      EPA admits the allegations in Paragraph 8.

9.      The allegations in Paragraph 9 are legal conclusions to which no response is required.

10.     The allegations in Paragraph 10 are legal conclusions to which no response is required. To the extent a response is required, EPA admits that it issued the Compliance Order from its Region 8 offices located in Denver, Colorado and that Gasco's principal place of business is located in Colorado.

11.     EPA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12.     EPA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12.

13.     EPA admits that part or all of the real property owned by the Lamb Trust is in the 100-year floodplain of the Green River.

14.     EPA admits the allegations in Paragraph 14.

15.     EPA admits that the Green River cuts across the northeast quarter, southeast quarter and southwest quarter of Section 23, Township 9 South, Range 19 East in Uintah County.

16.     EPA admits that Gasco performed work on the access road to a well known as LT 24-14 and placed fill in wetlands as part of that work.  EPA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16.

17.     EPA admits the allegations in Paragraph 17.

18.     EPA admits that prior to January 30, 2008, Gasco commenced work to drill a natural gas well in section 23 of Township 9 South Range 19 East in Uintah County, known as the LT 12-23 well, but lacks knowledge or information sufficient to form a belief about the truth of the allegation that Gasco commenced work on or about December 20, 2007.

19.     EPA admits the allegations in Paragraph 19.

20.     EPA admits that on January 28, 2008, Bekee Megown (now known as Bekee Hotze) of the United States Fish and Wildlife Service contacted by e-mail Susan Nall of the Corps. EPA admits that the email was sent after Gasco had performed work on the access road to LT 24-14 and in the approximate time frame when Gasco was drilling the LT 12-23 well. The remaining allegations in Paragraph 20 characterize the contents of the e-mail dated January 28, 2008, and attached photograph, both attached to the complaint as Exhibit 6, and the documents speak for themselves and are the best evidence of their contents.

21.     EPA admits that on January 29, 2012, Ms. Nall responded by e-mail to Ms. Hotze.  The remaining allegations in Paragraph 21 characterize the contents of the e-mail dated

January 29, 2008, attached to the complaint as Exhibit 6, and the document speaks for itself and is the best evidence of its contents.

22.    EPA admits that on January 29, 2012, Ms. Hotze replied to Ms. Nall's e-mail.  The remaining allegations in Paragraph 22 characterize the contents of the e-mail dated January 29, 2008, attached to the complaint as Exhibit 6, and the document speaks for itself and is the best evidence of its contents.

23.    EPA denies the allegations in the first and second sentences in Paragraph 23.  With respect to the allegations in the third sentence of Paragraph 23, EPA denies that Gasco used a closed loop system for the entire drilling process and lacks knowledge or information sufficient to form a belief as to the truth of the allegation as to whether Gasco ever used a closed loop drilling system during the drilling process.

24.     EPA admits that on February 5, 2008, Ms. Nall had a telephone conference with David Smith, an employee of Gasco, to discuss Gasco's drilling activities but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24.

25.    EPA admits the allegations in the first sentence in Paragraph 25.  The remaining allegations in Paragraph 25 characterize the contents of the e-mail dated February 5, 2008, attached to the complaint as Exhibit 8, and the document speaks for itself and is the best evidence of its contents.

26.    EPA admits the allegations in the second sentence of Paragraph 26.  The remaining allegations in Paragraph 26 characterize the contents of the e-mail dated February 5, 2008, attached to the complaint as Exhibit 8, and the document speaks for itself and is the best evidence of its contents.

27.    The allegations in Paragraph 27 characterize the contents of the e-mail dated February 5,

2008, attached to the complaint as Exhibit 8, and the document speaks for itself and is the

best evidence of its contents.

28.    The allegations in Paragraph 28 characterize the contents of the e-mail dated February 5,

2008, attached to the complaint as Exhibit 8, and the document speaks for itself and is the

best evidence of its contents.

29.    EPA admits that on February 11, 2008, Mr. Smith responded to Ms. Nall's February 5,

2008, e-mail.  The remaining allegations in Paragraph 29 characterize the contents of the

e-mail dated February 11, 2008, attached to the complaint as Exhibit 8, and the document

speaks for itself and is the best evidence of its contents.

30.    EPA admits the allegations in the first sentence of Paragraph 30.  The remaining

allegations in Paragraph 30 characterize the contents of Ms. Nall's written summary of

the conversation, attached to the complaint as Exhibit 7 at 00318-19, and the document

speaks for itself and is the best evidence of its contents.

31.    EPA lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 31.

32.    EPA lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 32.

33.    The allegations in Paragraph 33 characterize the contents of a report dated August 2008

prepared by SWCA Environmental Consultants ("SWCA"), attached to the complaint as

Exhibit 1-A, and the document speaks for itself and is the best evidence of its contents.

34.     The allegations in Paragraph 34 characterize the contents of the report prepared by
        SWCA, attached to the complaint as Exhibit 1-A, and the document speaks for itself and
        is the best evidence of its contents.

35.     The allegations in Paragraph 35 characterize the contents of the report prepared by
        SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and
        is the best evidence of its contents.

36.     The allegations in Paragraph 36 characterize the contents of the report prepared by
        SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and
        is the best evidence of its contents.

37.     EPA admits the allegations in the first sentence of Paragraph 37.  EPA lacks knowledge
        or information sufficient to form a belief as to the truth of the allegations in the second
        sentence in Paragraph 37 because the Corps has not conducted a wetland delineation of
        the land between the wetland impacted by the access road to LT 24-14 and the Green
        River.

38.     EPA lacks knowledge or information sufficient to form a belief about the truth of the
        allegations in Paragraph 38.

39.     The allegations in Paragraph 39 characterize the contents of the report prepared by Buys
        and Associates, Inc. ("Buys"), attached to the complaint as Exhibit 1-C, and the
        document speaks for itself and is the best evidence of its contents.

40.     EPA admits the allegations in Paragraph 40.

41.     EPA admits that, on or about October 2, 2008, Ms. Nall made a preliminary jurisdictional
        determination that the LT 12-23 well was located in a wetland adjacent to and abutting
        the Green River and subject to regulatory jurisdiction under the Clean Water Act.

42.    EPA admits that, on or about October 2, 2008, Ms. Nall made a preliminary jurisdictional

determination that a portion of the access road to LT 24-14 was located in a wetland

adjacent to the Green River and subject to regulatory jurisdiction under the Clean Water

Act.

43.    The allegations in Paragraph 43 are legal conclusions to which no response is required.

44.    The allegations in Paragraph 44 are legal conclusions to which no response is required.

45.    EPA admits that the Clean Water Act contains no statutory definition of "waters of the

United States."

46.    The allegations in Paragraph 46 are legal conclusions to which no response is required.

47.    The allegations in Paragraph 47 are legal conclusions to which no response is required.

48.    The allegations in Paragraph 48 are legal conclusions to which no response is required.

49.    The allegations in Paragraph 49 are legal conclusions to which no response is required.

50.    The allegations in Paragraph 50 are legal conclusions to which no response is required.

51.    The allegations in Paragraph 51 are legal conclusions to which no response is required.

52.    The allegations in Paragraph 52 are legal conclusions to which no response is required.

53.    The allegations in Paragraph 53 are legal conclusions to which no response is required.

54.    The allegations in Paragraph 54 are legal conclusions to which no response is required.

55.    EPA admits that subsequent to the Supreme Court ruling in *Rapanos v. United States*,

547 U.S. 715 (2006), the Corps and EPA issued a document entitled "Clean Water Act

Jurisdiction Following the U.S. Supreme Court's Decision in Rapanos v. United States &

Carabell v. United States" and further admits that this document provides guidance to the

Corps and EPA for implementing the Supreme Court's decision in *Rapanos*.   In further

response, EPA states that the document speaks for itself.

56.    The allegations in Paragraph 56 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

57.    The allegations in Paragraph 57 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

58.    The allegations in Paragraph 58 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

59.    The allegations in Paragraph 59 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

60.    The allegations in Paragraph 60 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

61.    In response to the first sentence of Paragraph 61, EPA admits that the Arid West Supplement provides technical guidance and procedures for identifying and delineating wetlands that may be subject to regulatory jurisdiction under Section 404 of the Clean Water Act in the arid west region.   The allegations in the second sentence of Paragraph 61 are legal conclusions to which no response is required.

62.    The allegations in Paragraph 62 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

63.     The allegations in Paragraph 63 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

64.     The allegations in Paragraph 64 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

65.     The allegations in Paragraph 65 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

66.     The allegations in Paragraph 66 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

67.     EPA admits that whether plants are hydrophytic, as opposed to mesic or xeric, is currently determined for Clean Water Act purposes using a wetland plant list administered by the Corps, but denies that the National Wetland Plant List cited in Paragraph 67, which was issued in 2012, was used to make the plant determinations associated with the Preliminary Jurisdictional Determination prepared by Ms. Nall.

68.     EPA admits that the allegations in Paragraph 68(a), (b), (c), (d), and (e) identify five categories that are used in the wetland plant list.  EPA denies the allegations in last sentence of Paragraph 68.

69.     EPA admits that, in general, hydrophytic vegetation is present when the plant community is dominated by species that can tolerate prolonged inundation or soil saturation during the growing season.  The allegations in the second sentence of Paragraph 69 characterize

the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and
the document speaks for itself and is the best evidence of its contents.

70.     The allegations in Paragraph 70 characterize the contents of the Arid West Supplement,
attached to the complaint as Exhibit 11, and the document speaks for itself and is the best
evidence of its contents.

71.     The allegations in Paragraph 71 characterize the contents of the Arid West Supplement,
attached to the complaint as Exhibit 11, and the document speaks for itself and is the best
evidence of its contents.

72.     The allegations in Paragraph 72 summarize the contents of a report prepared by SWCA,
attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
best evidence of its contents.

73.     The allegations in Paragraph 73 summarize the contents of a report prepared by SWCA,
attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
best evidence of its contents.

74.     The allegations in Paragraph 74 summarize the contents of a report prepared by SWCA,
attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
best evidence of its contents.

75.     The allegations in Paragraph 75 summarize the contents of a report prepared by SWCA,
attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
best evidence of its contents.

76.     The allegations in Paragraph 76 summarize the contents of a report prepared by SWCA,
attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
best evidence of its contents.

77.     The allegations in Paragraph 77 summarize the contents of a report prepared by SWCA,
        attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
        best evidence of its contents.

78.     The allegations in Paragraph 78 summarize the contents of a report prepared by SWCA,
        attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
        best evidence of its contents.

79.     The allegations in Paragraph 79 summarize the contents of a report prepared by SWCA,
        attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
        best evidence of its contents.

80.     The allegations in Paragraph 80 summarize the contents of a report prepared by SWCA,
        attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
        best evidence of its contents.

81.     The allegations in Paragraph 81 summarize the contents of a report prepared by SWCA,
        attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the
        best evidence of its contents.

82.     The allegations in Paragraph 82 summarize the contents of a report prepared by Buys,
        attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the
        best evidence of its contents.

83.     The allegations in Paragraph 83 summarize the contents of a report prepared by Buys,
        attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the
        best evidence of its contents.

84.     The allegations in Paragraph 84 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

85.     The allegations in Paragraph 85 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

86.     The allegations in Paragraph 86 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

87.     The allegations in Paragraph 87 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

88.     The allegations in Paragraph 88 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

89.     The allegations in Paragraph 89 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

90.     EPA admits that Ms. Nall's performance of her hydrophytic vegetation determination included sampling plants from four different locations (P1 through P4) surrounding the LT 12-23 well in June 2008.

91.     EPA admits the allegations in the first sentence of Paragraph 91.  The allegations in the second sentence in Paragraph 91 characterize the contents of data forms prepared by Ms.

Nall, attached to the complaint as Exhibit 2, and the documents speak for themselves and are the best evidence of their contents.

92.    EPA denies the allegations in Paragraph 92.

93.    EPA admits that Ms. Nall found that dominant FACW plants constituted 20% of the cover at P1 and 2% at P3, and denies the remaining allegations of Paragraph 93.

94.    EPA admits that Ms. Nall found that *distichlis spicata* constituted 50% of the cover within the herb stratum at P1, 40% within the herb stratum at P2 and 60% within the herb stratum at P4 and denies the remaining allegations of Paragraph 94.

95.    EPA admits that Ms. Nall found that dominant FACU plants constituted 20% of the cover within the herb stratum at P1 and P3.

96.    EPA admits the allegations of Paragraph 96.

97.    The allegations in Paragraph 97 characterize the contents of data forms prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the documents speak for themselves and are the best evidence of their contents..

98.    EPA admits the allegations in Paragraph 98.

99.    EPA admits the allegations in Paragraph 99.

100.    The allegations in Paragraph 100 characterize the contents of the Preliminary Jurisdictional Determination prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

101.    The allegations in Paragraph 101 characterize the contents of the Preliminary Jurisdictional Determination prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

102.    The allegations in Paragraph 102 characterize the contents of the Preliminary Jurisdictional Determination prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

103.    The allegations in Paragraph 103 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

104.    The allegations in Paragraph 104 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

105.    The allegations in Paragraph 105 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

106.    The allegations in Paragraph 106 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

107.    The allegations in Paragraph 107 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

108.    The allegations in Paragraph 108 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

109.    The allegations in Paragraph 109 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

110.    The allegations in Paragraph 110 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

111.    The allegations in Paragraph 111 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

112.    The allegations in Paragraph 112 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

113.    The allegations in Paragraph 113 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

114.    The allegations in Paragraph 114 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

115.    The allegations in Paragraph 115 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

116.    The allegations in Paragraph 116 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

117.    The allegations in Paragraph 117 summarize the contents of a report prepared by Buys, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

118.    The allegations in Paragraph 118 characterize the contents of the Preliminary Jurisdictional Determination prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

119.    EPA admits that Ms. Nall's performance of her hydric soils determination included sampling soils from four different locations (P1 through P4) surrounding the LT 12-23 well in June 2008.

120.    EPA admits the allegations in the first sentence in Paragraph 120.  The allegations in the second sentence in Paragraph 120 characterize the contents of data forms prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the documents speak for themselves and are the best evidence of their contents.

121.    EPA denies the allegations in Paragraph 121.

122.    The allegations in Paragraph 122 characterize the contents of data forms prepared by Ms. Nall, attached to the complaint as Exhibit 2, and the documents speak for themselves and are the best evidence of their contents.

123.    EPA admits the allegations in the first, second, third, fourth, fifth and seventh sentences of Paragraph 123.  With respect to the sixth sentence in Paragraph 123, EPA admits that

if ferrous iron is present at adequate concentration levels, the drops of the solution will

turn bright pink or red within a few seconds.

124.    EPA admits the allegations in the first and second sentences of Paragraph 124.  The third

sentence of Paragraph 124 characterizes the contents of the Preliminary Jurisdictional

Determination and the Arid West Supplement, attached to the complaint as Exhibits 2

and11, and the documents speak for themselves and are the best evidence of their

contents.

125.    EPA admits the allegations in Paragraph 125.

126.    The allegations in Paragraph 126 characterize the contents of data forms prepared by Ms.

Nall, attached to the complaint as Exhibit 2, and the documents speak for themselves and

are the best evidence of their contents.

127.    EPA admits the allegations in the first and third sentences of Paragraph 127.  EPA denies

the allegations in the second sentence of Paragraph 127.

128.    The allegations in Paragraph 128 characterize the contents of the Preliminary

Jurisdictional Determination prepared by Ms. Nall, attached to the complaint as Exhibit

2, and the document speaks for itself and is the best evidence of its contents.

129.     The allegations in the first sentence in Paragraph 129 characterize the contents of the

Preliminary Jurisdictional Determination prepared by Ms. Nall, attached to the complaint

as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

EPA admits the allegations in the second, fourth and fifth sentences in Paragraph 129.

EPA denies the allegations in the third sentence of Paragraph 129.

130.   The allegations in Paragraph 130 characterize the contents of the Preliminary

Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document

speaks for itself and is the best evidence of its contents.

131.   The allegations in Paragraph 131 characterize the contents of the Preliminary

Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document

speaks for itself and is the best evidence of its contents.

132.   The allegations in Paragraph 132 characterize the contents of the Preliminary

Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document

speaks for itself and is the best evidence of its contents.

133.   The allegations in Paragraph 133 characterize the contents of an email from Ms. Nall to

Mr. Sutcliffe, attached to the complaint as Exhibit 2, and the document speaks for itself

and is the best evidence of its contents.

134.    The allegations in Paragraph 134 characterize the contents of an email from Ms. Nall to

Mr. Sutcliffe, attached to the complaint as Exhibit 2, and the document speaks for itself

and is the best evidence of its contents.

135.   EPA admits that the body of the reply e-mail that Mr. Sutcliffe sent to Ms. Nall and that

Gasco attached to its complaint as Exhibit 2 is redacted.

136.   The allegations in Paragraph 136 characterize the contents of the Preliminary

Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document

speaks for itself and is the best evidence of its contents.

137.   The allegations in Paragraph 137 characterize the contents of the Arid West Supplement,

attached to the complaint as Exhibit 11, and the document speaks for itself and is the best

evidence of its contents.

138.    The allegations in Paragraph 138 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

139.    The allegations in Paragraph 139 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

140.    The allegations in the first and second sentences in Paragraph 140 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.  With respect to the third sentence of Paragraph 140, EPA admits that the Corps did not conduct direct hydrologic monitoring as described in the second sentence of Paragraph 140.

141.    The allegations in Paragraph 141 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.

142.    The allegations in the first sentence of Paragraph 142 characterize the contents of the Arid West Supplement, attached to the complaint as Exhibit 11, and the document speaks for itself and is the best evidence of its contents.  EPA denies the second sentence of Paragraph 142.

143.    The allegations in Paragraph 143 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-A, and the document speaks for itself and is the best evidence of its contents.

144.    The allegations in Paragraph 144 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

145.    The allegations in Paragraph 145 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

146.    The allegations in Paragraph 146 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

147.    The allegations in Paragraph 147 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

148.    The allegations in Paragraph 148 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the best evidence of its contents.

149.    The allegations in Paragraph 149 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-A, and the document speaks for itself and is the best evidence of its contents.

150.    The allegations in Paragraph 150 summarize the contents of a report prepared by SWCA, attached to the complaint as Exhibit 1-A, and the document speaks for itself and is the best evidence of its contents.

151.    The allegations in Paragraph 151 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the

best evidence of its contents.

152.    EPA admits the allegations in Paragraph 152.

153.    The allegations in Paragraph 153 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the

best evidence of its contents.

154.    The allegations in Paragraph 154 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the

best evidence of its contents.

155.    The allegations in Paragraph 155 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the

best evidence of its contents.

156.    The allegations in Paragraph 156 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-B, and the document speaks for itself and is the

best evidence of its contents.

157.    The allegations in Paragraph 157 summarize the contents of a report prepared by SWCA,

attached to the complaint as Exhibit 1-A, and the document speaks for itself and is the

best evidence of its contents.

158.    The allegations in Paragraph 158 summarize the contents of a report prepared by Buys

and Associates, attached to the complaint as Exhibit 1-C, and the document speaks for

itself and is the best evidence of its contents.

159.   The allegations in Paragraph 159 summarize the contents of a report prepared by Buys and Associates, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

160.   The allegations in Paragraph 160 summarize the contents of a report prepared by Buys and Associates, attached to the complaint as Exhibit 1-C, and the document speaks for itself and is the best evidence of its contents.

161.   The allegations in Paragraph 161 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

162.   The allegations in Paragraph 162 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

163.   EPA admits the allegations in Paragraph 163.

164.   EPA admits that, at each of the locations, Ms. Nall found three primary wetlands hydrology indicators that included the indicators alleged in Paragraph 164.

165.   EPA admits the allegations of Paragraph 165.

166.   EPA denies the allegations in Paragraph 166.

167.   EPA admits the allegations in Paragraph 167.

168.   EPA denies the allegations in Paragraph 168.

169.    EPA admits that Gasco provided Ms. Nall with a document titled "Jensen, Utah Metering Station Green River Flow Rates," a copy of which Gasco attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of

its contents. EPA lacks knowledge or information sufficient to form a belief about the date of the meeting alleged in Paragraph 169.

170. EPA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 170.

171. EPA admits that Gasco sent a letter to Ms. Nall dated September 12, 2008, and that the "log of inundation" and a declaration purportedly signed by a Gasco employee who prepared it were included as exhibits to the letter.

172. The allegations in Paragraph 172 characterize the contents of a "log of inundation," attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of its contents.

173. The allegations in Paragraph 173 characterize the contents of a "log of inundation," attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of its contents.

174. The allegations in Paragraph 174 characterize the contents of a "log of inundation," attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of its contents.

175. The allegations in Paragraph 175 characterize the contents of a "log of inundation," attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of its contents.

176. The allegations in Paragraph 176 characterize the contents of a "log of inundation," attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the best evidence of its contents.

177.    The allegations in Paragraph 177 characterize the contents of a "log of inundation,"
attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the
best evidence of its contents.

178.    The allegations in Paragraph 178 characterize the contents of a "log of inundation,"
attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the
best evidence of its contents.

179.    The allegations in Paragraph 179 characterize the contents of a "log of inundation,"
attached to the complaint as Exhibit 1-D, and the document speaks for itself and is the
best evidence of its contents.

180.    The allegations in Paragraph 180 characterize the contents of a "log of inundation" and
chart, attached to the complaint as Exhibit 1-D, and the documents speak for themselves
and are the best evidence of their contents.

181.    The allegations in Paragraph 181 characterize the contents of a "log of inundation" and
chart, attached to the complaint as Exhibit 1-D, and the documents speak for themselves
and are the best evidence of their contents.

182.    The allegations in Paragraph 182 characterize the contents of a "log of inundation" and
chart, attached to the complaint as Exhibit 1-D, and the documents speak for themselves
and are the best evidence of their contents.

183.    The allegations in Paragraph 183 characterize the contents of the Preliminary
Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document
speaks for itself and is the best evidence of its contents.

184.    The allegations in Paragraph 184 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

185.    The allegations in Paragraph 185 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

186.    The allegations in Paragraph 186 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

187.    The allegations in Paragraph 187 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

188.    The allegations in Paragraph 188 characterize the contents of the 2006 ROD, attached to the complaint as Exhibit 13, and the document speaks for itself and is the best evidence of its contents.

189.    The allegations in Paragraph 189 characterize the contents of the Final Environmental Impact Statement, attached to the complaint as Exhibit 14, and the document speaks for itself and is the best evidence of its contents.

190.    The allegations in Paragraph 190 characterize the contents of the Final Environmental Impact Statement, attached to the complaint as Exhibit 14, and the document speaks for itself and is the best evidence of its contents.

191.   The allegations in Paragraph 191 characterize the contents of the Final Environmental Impact Statement, attached to the complaint as Exhibit 14, and the document speaks for itself and is the best evidence of its contents.

192.   The allegations in Paragraph 192 characterize the contents of the Final Environmental Impact Statement, attached to the complaint as Exhibit 14, and the document speaks for itself and is the best evidence of its contents.

193.   The allegations in Paragraph 193 characterize the contents of the Final Environmental Impact Statement, attached to the complaint as Exhibit 14, and the document speaks for itself and is the best evidence of its contents.

194.   The allegations in the first sentence of Paragraph 194 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.  EPA denies the allegations in the second sentence of Paragraph 194.

195.   The allegations in Paragraph 195 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

196.   The allegations in Paragraph 196 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

197.   EPA admits that Ms. Nall stated that there was no known written policy by any of the various Corps offices she consulted regarding what constitutes an "ordinary" recurrence interval.

198.   The allegations in Paragraph 198 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

199.   The allegations in Paragraph 199 characterize the contents of the Preliminary Jurisdictional Determination, attached to the complaint as Exhibit 2, and the document speaks for itself and is the best evidence of its contents.

200.   EPA admits the allegations in Paragraph 200.

201.   EPA admits the allegations in Paragraph 201.

202.   EPA admits that, on or about October 8, 2008, Gasco sent a letter to Ms. Nall, attached to the complaint as Exhibit 9, and the document speaks for itself and is the best evidence of its contents.

203.   EPA admits that, on or about November 4, 2008, Ms. Nall responded to Gasco's letter, attached to the complaint as Exhibit 10, and the document speaks for itself and is the best evidence of its contents.

204.   EPA admits the allegations in Paragraph 204.

205.   EPA admits the allegations in Paragraph 205.

206.   EPA admits the allegations in Paragraph 206.

207.   EPA admits that certain information was redacted from attachments to the Preliminary Jurisdictional Determination but neither admits nor denies that the redacted information was "key."

208.   EPA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 208.

209.   EPA admits the allegations in Paragraph 209.

210. EPA admits that, on or about October 28, 2008, the Corps sent a letter to Gasco, attached to the complaint as Exhibit 3, and the document speaks for itself and is the best evidence of its contents.

211. The allegations in Paragraph 211 characterize the contents of the letter dated October 28, 2008, attached to the complaint as Exhibit 3, and the document speaks for itself and is the best evidence of its contents.

212. EPA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 212.

213. EPA admits the allegation of Paragraph 213.

214. The allegations in Paragraph 214 characterize the contents of the Compliance Order, attached to the complaint as Exhibit 4, and the document speaks for itself and is the best evidence of its contents.

215. The allegations in Paragraph 215 characterize the contents of the Compliance Order, attached to the complaint as Exhibit 4, and the document speaks for itself and is the best evidence of its contents.

216. The allegations in Paragraph 216 characterize the contents of the letter dated April 6, 2012, attached to the complaint as Exhibit 5, and the document speaks for itself and is the best evidence of its contents.

217. The allegations in Paragraph 217 characterize the contents of the Compliance Order, attached to the complaint as Exhibit 4, and the document speaks for itself and is the best evidence of its contents.

218.    The allegations in Paragraph 218 characterize the contents of the Compliance Order, attached to the complaint as Exhibit 4, and the document speaks for itself and is the best evidence of its contents.

219.    The allegations in Paragraph 219 characterize the contents of the Compliance Order, attached to the complaint as Exhibit 4, and the document speaks for itself and is the best evidence of its contents.

220.    EPA admits that Gasco did not request, and that EPA did not provide, a copy of the documents comprising the administrative record for the Compliance Order.

221.    EPA admits that representatives from EPA, the Corps and the U.S. Fish and Wildlife Service met, in person or by phone, with Gasco representatives on December 1, 2011, to discuss this matter.

222.    EPA admits that, on or about April 6, 2012, EPA sent a letter to Gasco, attached to the complaint as Exhibit 5, and the document speaks for itself and is the best evidence of its contents.

223.     EPA incorporates by this reference its response to Paragraphs 1 through 222 above.

224.    The allegations in Paragraph 224 are legal conclusions to which no response is required. To the extent a response is required, EPA denies the allegations in Paragraph 224.

225.    The allegations in Paragraph 225 are legal conclusions to which no response is required. To the extent a response is required, EPA denies the allegations in Paragraph 225.

226.    The allegations in Paragraph 226 are legal conclusions to which no response is required. To the extent a response is required, EPA denies the allegations in Paragraph 226.

227.    The allegations in Paragraph 227 are legal conclusions to which no response is required. To the extent a response is required, EPA denies the allegations in Paragraph 227.

228.    EPA incorporates by this reference its response to Paragraphs 1 through 227 above.

229.    The allegations in Paragraph 229 are legal conclusions to which no response is required.

To the extent a response is required, EPA denies the allegations in Paragraph 229.

## PRAYER FOR RELIEF

The remaining Paragraphs of Gasco's complaint consist of Gasco's request for relief, which does not require a response. To the extent a response is required, EPA denies that Gasco is entitled to any of the relief sought, or any other relief.

## GENERAL DENIAL

With respect to allegations that characterize or summarize the contents of documents attached as Exhibits to the Complaint, EPA denies any allegations contrary to the plain language and meaning of the documents. With respect to all other allegations, EPA denies each and every allegation of the complaint not specifically admitted in its responses to the complaint's specific Paragraphs, set forth above. To the extent that any allegations of fact in the complaint remain unanswered, EPA denies such allegations.

WHEREFORE, EPA requests the Court to enter judgment in its favor on Gasco's complaint and grant it all other appropriate relief.

## COUNTERCLAIMS

The United States of America, through its undersigned attorney, by the authority of the Attorney General, alleges as follows for its counterclaims against Gasco:

## NATURE OF THE ACTION

1.    The counterclaims are asserted under section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil penalties

against Gasco for the discharge of pollutants into waters of the United States in Uintah County, Utah, without authorization by the United States Department of the Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2.    In this action, the United States seeks (1) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a); (2) to require Gasco, at its own expense and at the direction of EPA, to restore and/or mitigate the damages caused by its unlawful activities; and (3) to require Gasco to pay civil penalties as provided in 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this counterclaim pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.    Venue is proper in this District pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because Gasco resides and has its principal place of business in this District.

5.    Notice of the commencement of this action has been provided to the State of Utah pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6.    The Counterclaim Plaintiff in this action is the United States of America.  Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and 33 U.S.C. § 1366.

7.    Counterclaim Defendant Gasco Energy, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Colorado.

8.      At all times relevant to the Counterclaims, Gasco leased interests in the real property located in Sections 14 and 23, Township 9 South, Range 19 East, Uintah County, Utah that is the subject of theses Counterclaims and/or otherwise controlled the energy exploration activities that occurred on this property.

## STATUTORY AND REGULATORY BACKGROUND

9.      CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, *inter alia*, a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344.

10.     CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

11.     CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

12.     CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand and cellar dirt.

13.     CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

14.     33 C.F.R. § 328.3(a)(1), (2), (5), and (7), and 40 C.F.R. § 232.2, define "waters of the United States" to include: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) all interstate waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters or their tributaries.

15.     33 C.F.R. § 328.3(b) and 40 C.F.R. § 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

16.     33 C.F.R. § 328.3(c) and 40 C.F.R. 230.3(b) define "adjacent" as "bordering, contiguous or neighboring.  Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands.'"

17.     CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

18.     CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include a corporation.

19.     CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

20.     CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a) or who violates any order issued by EPA under CWA section 309(a), 33 U.S.C. § 1319(a).

## GENERAL ALLEGATIONS

21.     Commencing in approximately 2004, at specific times best known by Gasco, Gasco and/or persons acting on its behalf, discharged dredged or fill material into waters of the United States without a permit under CWA section 404 in Sections 14 and 23, Township 9 South, Range 19 East, Uintah County, Utah on property owned by the Lamb Trust

(hereinafter referred to as the "Gasco Site.").  This discharge of dredged or fill material was associated with work on an access road to a natural gas well known by the designation LT 24-14, and associated with construction of an access road, well pad and natural gas well known by the designation LT 12-23.

22.    The dredged or fill material that Gasco and/or persons acting on its behalf caused to be discharged includes, among other things, dirt, spoil, rock and sand, all of which constitute "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6).

23.    Gasco and/or persons acting on its behalf used mechanized earth-moving equipment to accomplish the discharges.  This equipment constitutes "point sources" as defined in CWA section 502(14), 33 U.S.C. § 1362(14).

24.    Gasco did not obtain a permit from the Secretary of the Army, acting through the Corps of Engineers, for the discharges of dredged or fill material into waters of the United States as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

25.    Gasco leased or otherwise controlled the land on which each unauthorized discharge of dredged or fill material into waters of the United States occurred.

26.    Gasco conducted, contracted for, supervised and/or otherwise controlled the unauthorized activities described in Paragraph 21.

27.    Gasco is a person within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

28.    The Green River forms the eastern border of the Gasco Site.

29.    The Green River at the Gasco Site possesses a bed, bank and ordinary high water mark.

30.    The Green River at the Gasco Site contained a measurable flow of water each day for at least the last ten years, as shown by the records of the United States Geological Survey's Jensen Gauge, which is located upstream from the Gasco Site.

31.    The Green River in its reach bordering the Gasco Site is a relatively permanent,
        continuously flowing body of water forming a geographic feature that is described in
        ordinary parlance as a river.

32.    The Green River flows through Wyoming, Colorado and Utah and, therefore, is an
        interstate river.

33.    The reach of the Green River from Flaming Gorge Reservoir to above its confluence
        with the Price River is a traditional navigable water because it has been used in the past,
        is currently used, and is susceptible to use in interstate commerce.

34.    The Green River is a water of the United States and is a navigable water under CWA
        section 502(7), 33 U.S.C. § 1362(7).

35.    Prior to Gasco's activities described in Paragraph 21 above, the Gasco Site contained
        wetlands at the location of Gasco's activities.  The wetlands filled during construction of
        the access road, well pad and natural gas well associated with well LT 12-23 are located
        approximately 0.12 mile from the Green River.  The wetlands filled on the access road to
        the natural gas well known as LT 24-14 are located approximately 0.40 mile from the
        Green River.  Both wetlands are located in the 100-year floodplain of the Green River.

36.    The wetlands filled by Gasco at the Gasco Site during construction of the access road,
        well pad and natural gas well associated with well LT 12-23 have a direct connection to
        and abut the Green River.

37.    The wetlands filled by Gasco at the Gasco Site are located within the boundaries of a
        flood easement purchased by the United States in 2000 to permanently enhance and
        protect flooded bottomland habitat constituting designated critical habitat for the

razorback sucker and Colorado pikeminnow.  The razorback sucker and Colorado pikeminnow are, and have been at all relevant times, federally listed endangered species.

38.     The wetlands filled by Gasco at the Gasco Site provide habitat and nutrients for fish (including the endangered species referenced in Paragraph 37), filter pollutants, and attenuate higher river flows and have an ecological connection to the Green River.

39.     The wetlands filled by Gasco at the Gasco Site border, neighbor or are contiguous to the Green River and, therefore, are adjacent to the Green River.

40.     The wetlands filled by Gasco at the Gasco Site are waters of the United States and navigable waters under CWA section 502(7), 33 U.S.C. § 1362(7).

41.     Gasco has violated and continues to violate CWA section 301(a), 33 U.S.C. § 1311(a), by its unauthorized discharges of dredged or fill material into waters of the United States, including wetlands, at the Gasco Site.

42.     Each day that such material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

43.     Unless enjoined, Gasco is likely to continue to discharge dredged or fill material into and/or to allow dredged or fill material to remain in the Gasco Site in violation of CWA section 301, 33 U.S.C. § 1311.

**First Claim for Relief**
**(Discharge Into Waters of the United States Without a Section 404 Permit)**

44.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 43.

45.     Commencing in approximately 2004, at times better known to Gasco, Gasco and/or persons acting on its behalf discharged dredged or fill material into wetlands at the Gasco Site, located in Uintah County, Utah.

46. The wetlands filled at the Gasco Site are "waters of the United States" within the meaning of the Clean Water Act and the regulations promulgated thereunder.

47. Gasco did not obtain a permit from the Secretary of the Army for the discharges of this dredged or fill material into waters of the United States as required by the Clean Water Act.

48. Gasco's activities at the Gasco Site resulted in the filling of approximately 2.28 acres of waters of the United States.

<strong>Second Claim for Relief<br>(Violations of Administrative Order)</strong>

49. The United States repeats and realleges the allegations set forth in Paragraphs 1 through 48.

50. On September 29, 2011, Region 8 of EPA issued a Findings of Violation and Administrative Order for Compliance (the "Administrative Order") to Gasco.

51. Gasco received the Administrative Order on October 3, 2011.

52. The Administrative Order specified certain actions that Gasco was required to complete in order to come into compliance with the Administrative Order and the Clean Water Act, including the submission to EPA for review, comment and approval of a restoration plan to restore the wetlands that were impacted as a result of Gasco's unauthorized discharge of dredged and/or fill material at the Gasco Site.

53. Gasco has not complied with the requirements of the Administrative Order.

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, the Counterclaim Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

That Gasco be permanently enjoined from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the Clean Water Act;

That Gasco be enjoined to undertake measures, at Gasco's own expense and at the direction of EPA, to effect complete restoration of the Gasco Site and/or to conduct mitigation for irreversible environmental damage, as appropriate;

That Gasco be assessed pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of CWA section 301(a), 33 U.S.C. § 1311(a) and each day of violation of the Administrative Order;

That the United States be awarded costs and disbursements in this action; and

That this Court grant the United States such other relief as the Court may deem just and proper.

Respectfully submitted,

s/ Alan D. Greenberg

_____

ALAN D. GREENBERG
Environmental Defense Section
U.S. Department of Justice
999 18th St., Suite 370
Denver, Colorado  80202
Phone: (303) 844-1366
Fax: (303) 844-1350
E-mail:  alan.greenberg@usdoj.gov
Attorney for Defendant and Counterclaim-Plaintiff

OF COUNSEL:

Sheldon H. Muller
United States Environmental Protection Agency Region 8
1595 Wynkoop Street
Denver, CO  80202

September 5, 2012

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2012, I electronically filed the foregoing Answer and Counterclaims with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail address of counsel of record:

L. Poe Leggette
pleggette@fulbright.com

s/ Alan D. Greenberg

Alan D. Greenberg
Environmental Defense Section
U.S. Department of Justice
999 18th St., Suite 370
Denver, Colorado  80202
Phone: (303) 844-1366
Fax: (303) 844-1350
E-mail:  alan.greenberg@usdoj.gov