IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-CV-01658-MSK-BNB

GASCO ENERGY, INC.,

Plaintiff,

v.

ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

--------------------------------------------------------------------------

UNITED STATES OF AMERICA,

Counterclaim- Plaintiff,

v.

GASCO ENERGY, INC.,

Counterclaim-Defendant.

---

## ORDER AND STIPULATION REGARDING DISCOVERY PROCEDURE

---

WHEREAS, Gasco Energy, Inc., the U.S. Environmental Protection Agency, and the

United States of America mutually seek to reduce the time, expense and other burdens of

discovery of certain electronically stored information and privileged materials, as described

further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

A.    **Definitions**

1.    "Draft," when used to describe either an electronic or hard copy document, means a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise) or the most recent version at the time of collection.

2.    "Non-identical," when used to describe either an electronic or hard copy document, means that the document shows at least one facial change, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the face of the document, are not sufficient to render documents non-identical.

3.    "Parties" means the parties to this litigation, including their employees and agents.

4.    "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

B.     **Electronically Stored Information.**

1.     <u>Preservation Not Required for Electronically Stored Information That Is Not Reasonably Accessible</u>.

a.     Except as provided in subparagraph b below, the Parties need not preserve the following categories of electronically stored information for this litigation:

i.     Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

ii.     Voicemail messages;

iii.     Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

iv.     Text messages, such as cell phone to cell phone SMS messages;

v.     Electronic mail sent to or from a personal digital assistant ("PDA") or smartphone (e.g., BlackBerry) provided that a copy of such email is available elsewhere;

vi.     Other electronic data stored on a PDA or smartphone, such as calendar or contract data or notes, provided that a copy of such information is available elsewhere;

vii.     Logs of calls made from cellular phones;

viii.     Deleted computer files, whether fragmented or whole;

ix.     Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

x.     Data stored on photocopiers, scanners, and fax machines;

xi.     Server, system, or network logs;

xii.     Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form; and

xiii.     Data stored on legacy systems that were no longer in use five years before the complaint was filed.

b.     Notwithstanding subparagraph a. above, if on the date of this agreement either Party has a Policy that results in the routine preservation of any of the categories of information identified in subparagraph a, such Party shall continue to preserve such information in accordance with its Policy.

2.     Use of Documents During Litigation. Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI.

a.     The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in Part A. However, the Parties shall preserve Draft documents for discovery.

b.     The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter.

Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

  c.  The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that will be produced pursuant to Paragraph B.5 of this order.

  d.  The Parties may copy data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, that will be produced pursuant to Paragraph B.5 of this order.

  e.  The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this order and does not convert the format of the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

  f.  The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

  g.  The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

h.      The Parties may edit or take down any data on a publicly accessible internet site.

i.      The Parties may edit or take down any data on an intranet or private website.

j.      The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

k.      The Parties may update social media sites, but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

3.      <u>Preservation Required for Certain Subject Matters</u>. The Parties agree to preserve, for the purpose of this litigation, documents and ESI relating to the following subject matters and not exempted from preservation requirements pursuant to the preceding paragraphs of this Part B:

a.      The discharge of dredged and fill material to construct access roads, well pads, and Well Nos. 24-14 and 12-23 in Township 9 South, Range 19 East, Uintah County, Utah.

b.      The issuance of EPA's Findings of Violation and Administrative Order for Compliance, Docket Number CWA-08-2011-0038.

c.      Inspections of the site of the two oil and gas wells and associated access roads.

d.      Communications with contractors or federal or state agencies regarding
the above subjects.

e.      The decision to drill, and the drilling of, well numbers 12-23 and 24-14.

f.      Communications associated with the Gasco Energy, Inc. Uintah Basin
Natural Gas Development Project Environmental Impact Statement that are related to the
placement of oil or gas wells in the floodplain of the Green River.

4.      Preservation Does Not Affect Discoverability or Claims of Privilege. By
preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that
such material is discoverable, nor are they waiving any claim of privilege.

5.      Other Preservation Obligations Not Affected.  Nothing in this agreement shall
affect any other obligations of the Parties to preserve documents or information for other
purposes, such as pursuant to court order, administrative order, statute, or in response to other
anticipated litigation.

6.      Procedures for Production:  The following procedures apply to producing
documents or ESI. Compliance with these procedures shall constitute compliance with Federal
Rule of Civil Procedure 34(b)(2)(E).

a.      Paper documents: Documents printed on paper that is 11 x 17 inches or
smaller shall be scanned and produced on CD-ROM, DVD-ROM, or external hard drive.
Documents printed on larger paper may, at the Producing Party's discretion, be produced on
paper. Documents produced on paper must be produced as they are kept in the ordinary course of
business or must be organized and labeled to correspond to the categories in the request.

b.      Paper documents that are produced on disc shall be scanned as 300 dpi single-page TIFF files, using CCITT Group IV compression. Each page shall be branded with a unique Bates number, which shall not be an overlay of the image. The images shall be accompanied by: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a "text load file" containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than Custodian) if such fields cannot be extracted from a document.

c.      Word, WordPerfect, and PDF documents will be converted to single-page TIFF images and produced consistent with the specifications in subparagraph b, above, except that the text load file shall contain the extracted text from each document in place of OCR text, unless the document contains redactions, in which case OCR text may be provided. If the document contains comments or tracked changes that are not part of the ordinary text, the TIFF images shall be generated based on how the document appears when first opened using view settings contained in the file, and the receiving party shall have the option, after reviewing the produced TIFF image, to request the native file.

d.      Microsoft PowerPoint files will be processed and produced in the same manner as Word, WordPerfect, and PDF documents. Notes and other text that would not appear on the screen in the presentation view need not be shown on the JPEG images. The receiving party may, after reviewing the produced images, request color copies of specific Microsoft Powerpoint material and/or the native files.

8

e.      E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specification in subparagraph b, above. If the producing party redacts any part of the e-mail before producing it, OCR text may be provided in place of extracted text. E-mail attachments shall be processed as though they were separate documents, and the text load file shall include a field in which the producing Party shall identify, for each e-mail, the Bates range of any attachment;

f.      Microsoft Excel files and other spreadsheets will be produced in native file format in a separate folder on the production media. The text load file shall contain a field that identifies the file path of the native file corresponding to each document, and the Parties shall provide a placeholder TIFF image that shows the name of the native file and has a Bates number;

g.      Digital photographs will be produced as full color image files at their original resolution with Bates numbers branded onto them;

h.      Embedded files shall be treated as though they were separate files, except that the text load file shall include a field in which the producing Party shall identify, for each document containing an embedded file, the Bates range of any such embedded file. This Bates range may be identified in the same field as the Bates range of an e-mail attachment.

i.      Before any Party produces any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Parties will meet and confer to determine a reasonably useable form for the production.

j.      Except as expressly stated otherwise above, TIFF images produced in this matter may be black-and-white images (no shades of gray). However, the receiving party has the

option, after reviewing the produced TIFF image, to enquire whether the original document contained color and, if so, to request a color image.

k.      Except as stated above, a Party need not produce the same electronically stored information in more than one form.

l.      In addition to the specific rights and obligations identified in sub-sections (a) through (k) of this paragraph, each party reserves the right to request a producing party to produce any specific document in native format.

7.    Duplicates.

a.      Deduplication of e-mail. The Parties shall identify exact duplicates of e-mails based on one of the following methods, and shall produce only one copy from each set of exact duplicates:

    i.      comparing the MessageID or UNID metadata fields; or

    ii.      calculating and comparing the MD5 of SHA-1 hash value.

b.      The Parties hereby stipulate and agree that there shall be in this matter a rebuttable presumption of evidence that an e-mail correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox.

c.      Deduplication of ESI other than e-mail. The Parties shall identify exact duplicates of electronic files other than e-mail and attachments based on MD5 or SHA-1 hash values and shall produce only one copy from each set of exact duplicates. For duplicative documents, the producing party will provide a list identifying each custodian that has possession or custody of the file at the time of collection.

8.      Meet and Confer Requirements.

a.      Discovery Disputes. Before filing any motion with the Court regarding electronic discovery or evidence, the Parties will meet and confer in a good faith attempt to resolve such disputes.

b.      Search Terms. The Parties will meet and confer to identify mutually agreeable search terms for email messages and other electronically stored information, however, this agreement to meet and confer does not obligate any Party to agree to perform an electronic search.

c.      Third-Party Data. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

C.      **Limitations on Discovery.**

1.      No Discovery of Material Not Required To Be Preserved. The Parties shall not seek discovery of items that need not be preserved pursuant to paragraphs B.1-2 above.

2.      Privileged Materials Located in the Offices of Counsel. The Parties agree that, in response to general discovery requests, the Parties need not search for and produce, nor create a privilege log for, any privileged or work product material authored by an attorney on or after May 4, 2012, that is located in the offices of the U.S. Department of Justice or Fulbright & Jaworski.

D.     **Protection of Privileges.**

Pursuant to Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, and pursuant to Rule 502 of the Federal Rules of Evidence, it is hereby ORDERED:

1.     This Order invokes the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) will not apply to the disclosure of communications or information in discovery in this matter.

2.     The prosecution and defense of this action will require each Party to review and to disclose large quantities of information and documents, including electronically stored information, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

3.     Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in discovery conducted in this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

4.     The Court further orders that because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, and because Rule

502(d) does not preserve privileges other than the attorney-client privilege and work-product protection, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional, inadvertent, and compelled by order of this Court. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials. However, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation irrespective of the procedures used screen out privileged materials.

5.      If a Party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing Party shall, within 14 days of making such determination, give all counsel of record notice of the claim of privilege. The notice shall identify each such document and the date it was produced. If the producing Party claims that only a portion of a document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

6.      If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege. Such notification shall not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document. If the Party holding

13

the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice in accordance with paragraph 5 above within five business days of receiving notice from the identifying Party.

7.     Upon receiving notice of a claim of privilege on a produced document, the receiving Party must, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and may not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party must take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it must take reasonable steps to prevent further use of such information until the claim is resolved.

8.     If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall, within 14 days, and after complying with the duty to confer under D.C.COLO.LCivR 7.1A., move the Court for an order compelling disclosure of the information. The Party shall follow the procedures described in Fed. R. Civ. P. 26(b)(5)(B) and must not assert, as a ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

9.     The Parties may stipulate to extend the time periods specified in paragraphs 5, 6, and 8 above.

10.     Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

11.     The Party wishing to assert a claim of privilege retains the burden, upon challenge pursuant to paragraph 8, of establishing the applicability of the claimed privilege.
This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**E.**     **Preparation of Privilege Log.**

1.     The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively shall not apply to:

      a.     Communications exclusively between a party and its trial or agency

           counsel after May 4, 2012;

      b.     Work product created by trial counsel, agency counsel or a paralegal in

trial counsel's office after May 4, 2012; or

      c.     Internal communications within (a) a law firm, (b) a legal assistance

organization, (c) a governmental law office, or (d) a legal department of a corporation or another organization.

2.     Embedded e-mails. An e-mail shall be treated as a single document regardless of the number of embedded emails contained within the message body. The privilege log for an e-mail withheld under a claim of privilege, to the extent any is required, shall identify the author, recipient(s), subject, dates and times based on the metadata from the top-level message, and shall

not include data from any e-mail embedded in the message body. However, if an e-mail contains both privileged and non-privileged communications, the non-privileged communications must be produced. This requirement should be satisfied by producing the original of the embedded, non-privileged e-mail, but if the original is not available, it may be satisfied by producing a redacted version of the privileged e-mail.

F.      **Costs of Document Production.** Unless this Court orders otherwise for good cause shown, each Party shall bear the costs of producing its own documents.

G.      **Integration/Appendices.** The following documents are incorporated herein by reference:

"Appendix A" is a table describing the fields to be included in the databases produced by each Party.

FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT
GASCO ENERGY, INC.:

s/ Mark S. Barron
L. Poe Leggette
Mark S. Barron
FULBRIGHT & JAWORSKI LLP
1200 17th Street, Suite 1000
Denver, Colorado 80209
Telephone: 303.801.2700
poe.leggette@nortonrosefulbright.com
mark.barron@nortonrosefulbright.com

FOR DEFENDANT U.S. ENVIRONMENTAL
PROTECTION AGENCY and COUNTERCLAIM-PLAINTIFF
UNITED STATES OF AMERICA:

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division

 s/ Alan D. Greenberg
ALAN D. GREENBERG
U.S. Department of Justice
999 18th Street, Suite 370
Denver, Colorado  80202
(303) 844-1366
alan.greenberg@usdoj.gov

SO ORDERED this 4th day of September, 2013.

HON. BOYD N. BOLAND
U.S. Magistrate Judge

17

Appendix A:
Fields to Exchange in Databases of Discovery Materials

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| Begin_Bates | Text | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page | Bates number for the TIFF image of the first page, or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto a TIFF file that has the same resolution as the native image file. | Bates number for the TIFF image of the first page |
| End_Bates | Text | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page | Bates number for the TIFF image of the last page, or, if spreadsheets are not TIFFed, the Bates number of the placeholder page | Bates number branded onto the native image file | Bates number for the TIFF image of the last page |
| Attachment | Text | Bates range of the attachments. Only the first page of the first attachment and the last page of the last attachment are indicated. | Bates range of all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Only the first page of the first attachment and the last page of the last attachment are indicated. | Bates range of all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Only the first page of the first attachment and the last page of the last attachment are indicated. | Bates range of all documents (including e-mails) to which this file was attached or in which it was embedded. Only the first page of the first attachment and the last page of the last attachment are indicated. | Bates range of all document that were physically attached by clips, staples, or binding. Only the first page of the first attachment and the last page of the last attachment are indicated. |
| Custodian | Text | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person who had primary control over the location from which the document was collected | The name of the person maintaining the file from which the paper was obtained |
| Author | Paragraph | "From" field | <blank> | <blank> | <blank> | <blank> |

| Name of Field | Type of field | Contents | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing or PDFs | Spreadsheets | Digital Photos | Paper |
| To | Paragraph | "To" field | <blank> | <blank> | <blank> | <blank> |
| CC | Paragraph | "CC" field | <blank> | <blank> | <blank> | <blank> |
| BCC | Paragraph | "BCC" field | <blank> | <blank> | <blank> | <blank> |
| Subject | Paragraph | "Subject" field | <blank> | <blank> | <blank> | <blank> |
| DateSent | Date | The date and time the message was sent | <blank> | <blank> | <blank> | <blank> |
| Filename | Paragraph | <blank> | The name the file | The name the file | The name the file | <blank> |
| Folder | Paragraph | <blank> | The complete file path for the location from which the file was collected, starting with the identification of the machine | The complete file path for the location from which the file was collected, starting with the identification of the machine | The complete file path for the location from which the file was collected, starting with the identification of the machine | The title of the folder in which the document was kept. |
| Native_File | Paragraph | <blank> | The path to the native file on the production media | The path to the native file on the production media | <blank> | <blank> |
| Text | Paragraph | Text extracted from the message body | Text extracted from the file. However, if the file does not contain text or if redactions were made, then OCR text shall be provided. | <blank> | <blank> | <blank> |

2